NOT FOR PUBLICATION

<div style="text-align:center">

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

</div>

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DIVINE ZION | No. 22cr527 (EP)<br><br>**MEMORANDUM ORDER** |

**PADIN**, **District Judge.**

Defendant Divine Zion, accused of violating 18 U.S.C. § 922(g)(1),[1] the "felon-in-possession" statute, moves to dismiss the indictment, D.E. 1 (the "Indictment"). Zion argues that the statute is unconstitutional both facially and as applied to him. D.E. 40 ("Mot."). The Government opposes. D.E. 44 ("Opp'n"). For the reasons below, the Court will **DENY** the motion.[2]

## I.   BACKGROUND

On May 1, 2022, the Newark Police Department received an anonymous report that an individual matching Zion's description was armed with a handgun near 215B Chadwick Avenue, Newark, New Jersey. Opp'n at 2. The information was routed to patrolling Newark police officers, who saw Zion in the parking lot of 215B Chadwick Avenue carrying a fanny pack. *Id.* As officers approached Zion, he dropped his fanny pack and ran. *Id.* An officer picked up the fanny pack and felt the outline of a gun. *Id.* After briefly pursuing Zion on foot, the officers placed Zion under

---

[1] New Jersey does not classify crimes as felonies or misdemeanors. The Court defines "felony" as "a crime punishable by imprisonment for a term exceeding one year," 18 U.S.C. § 922(g)(1), excluding any state crime classified as a state misdemeanor and punishable by a term of imprisonment of two years or less," 18 U.S.C. § 921(a)(20)(B).

[2] The Court decides this motion without oral argument pursuant to Local Criminal Rule 1.1 and Local Civil Rule 78.1(b).

arrest and recovered a 9 mm Ruger model LC9 handgun loaded with one round in the chamber and 6 rounds in the magazine. *Id.*

On August 4, 2022, Zion was indicted for knowing possession of a firearm and ammunition by a felon under 18 U.S.C. § 922(g)(1). D.E. 1. Zion's prior felony convictions are as follows[3]:

1. Zion was arrested on June 2, 1994 and March 27, 1995 and later convicted on February 2, 1996 of two counts of possession with intent to distribute a controlled substance on or near school property, N.J.S.A. 2C:35-7. Opp'n at 3. He was sentenced to three years' imprisonment. *Id.*

2. On February 21, 2003, Zion was convicted for another violation of N.J.S.A. 2C:35-7, as well as manufacturing, distributing, or dispensing a controlled substance, N.J.S.A. 2C:35-5B(11). *Id.* He was sentenced to eight years' imprisonment.

3. Less than two months later, on April 14, 2003, Zion was convicted and later sentenced to four years' imprisonment for manufacturing, distributing, or dispensing a controlled substance, N.J.S.A. 2C:35A(1); N.J.S.A. 2C:35-5B(11). *Id.*

4. On July 14, 2017, Zion was again convicted of manufacturing, distributing, or dispensing a controlled substance, N.J.S.A. 2C:35A(1). *Id.* He was sentenced to five years' imprisonment but was resentenced to 18 months' imprisonment on January 18, 2019. *Id.*

5. On October 27, 2017, Zion was convicted of unlawful possession of a handgun, N.J.S.A. 2C:39-5B(1) and sentenced to three years' imprisonment. *Id.*

---

[3] Zion's pending charges in the Essex County case are not relevant to the Court's analysis.

Zion does not contest the existence of those convictions, or even the firearms allegations here.[4] Rather, Zion argues that the Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), the Third Circuit's en banc decision in *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023), and subsequent district court opinions, including in this Circuit, mandate a finding that § 922(g)(1) is unconstitutional on its face and as applied to Zion. Specifically, Zion argues that § 922(g)(1) violates the constitution by imposing an effective lifetime ban on him, and others similarly situated, based only on their felon status, *i.e.*, that they were convicted of crimes punishable by a year or more in prison. Zion also argues that § 922(g)(1) is void-for-vagueness and beyond Congress's authority under the Commerce Clause.[5]

## II.   ANALYSIS

### A.  Second Amendment Jurisprudence Before and After *Bruen*

The Second Amendment provides that a "well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." Until recently, many courts, including the Third Circuit, required a two-step means-end analysis in Second Amendment cases. First, courts would ask whether "the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010). If so, courts would "evaluate the law under some form of means-end scrutiny. If the law passe[d] muster under that standard, it [was] constitutional." *Id.*

---

[4] Zion does not reply to the Government's opposition, but does amit "previous felony convictions in New Jersey State Court." Mot. at 3.

[5] Zion submits that "the Supreme Court could one day 'temper'" its Commerce Clause jurisprudence and "preserve[s]" the argument that § 922(g)(1) is inconsistent with the provision's original public meaning. Mot. at 14. However, he acknowledges that this argument is foreclosed by Supreme Court precedent. *See NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937).

In *Bruen*, the Supreme Court eliminated any means-end analysis and clarified the framework that courts should follow. 597 U.S. at 20. Now, "[t]o justify its regulation, . . . the [G]overnment must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 17 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)). Section 922(g)(1) clearly regulates possession of a firearm—it is effectively a lifetime ban on firearm and ammunition possession for felons. Thus, the Court must apply *Bruen*'s framework.

*Bruen* mandates two steps.[6] First, "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 591 U.S. at 17. And second, if the Second Amendment covers the conduct, the "presumption" that the conduct is constitutionally protected can be rebutted only if the Government is able to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24.

Many defendants have argued that *Bruen* or *Range* rendered § 922(g)(1) presumptively unconstitutional. This is incorrect, as most jurists to address the issue have emphasized that *Bruen* does not disturb any part of *Heller* or *McDonald* pertaining to restrictions that may be imposed on the possession or carrying of guns, including such restrictions on convicted felons. *Bruen*, 597

---

[6] Even courts characterizing *Bruen*'s framework as a "one-step, burden-shifting approach" recognize that the "approach consists of *first* determining whether the Second Amendment's plain text covers [the charged] conduct, and *then* determining whether [the government has] met [its] burden of demonstrating that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Antonyuk v. Hochul*, 639 F. Supp. 3d 232, 298 (N.D.N.Y. 2022) (emphasis added).

U.S. at 72 (Alito, J., concurring). For example, Justice Kavanaugh and Chief Justice Roberts reassert that "'[n]othing in [*Bruen*] should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . .'" *Id.* at 81 (Kavanaugh, J., concurring) (quoting *Heller*, 554 U.S. at 626 and *McDonald*, 561 U.S. at 786). Likewise, Justice Alito emphasized that *Bruen* does not "disturb[] anything that we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns," *id.* at 72 (concurring), and he reiterated that *Bruen*'s holding is limited to the rights of "law-abiding people," *id.* at 76 (concurring); *see United States v. Canales*, No. 21-226, 2023 WL 8092078, at *3 (E.D. Pa. Nov. 20, 2023) ("[S]ix Justices (Roberts, Alito, Kavanaugh, Breyer, Sotomayor, and Kagan), through concurring and dissenting opinions, [have] signaled their understanding that the majority opinion in *Bruen* did not call into question the constitutionality of the § 922(g)(1).")

It is true that after *Range*, a Second Amendment challenge to § 922(g)(1)'s constitutionality, as applied to a particular defendant, is "nonfrivolous." *United States v. Perez*, No. 22-55, 2024 WL 579115, at *2 (D. Del. Feb. 13, 2024). There are, in other words, conceivable scenarios—as in *Range*—in which the Second Amendment could be found unconstitutional as to a particular individual's circumstances and background. But *Range* is considered an "outlier" because he

> had been convicted in 1995 of a non-violent misdemeanor (considered to be a felony for federal purposes due to the maximum sentence being five years imprisonment), served a probationary sentence, paid his financial obligations caused by the conviction, and otherwise lived without contact with the criminal justice system for more than twenty years. He then came to court so that he could purchase a long gun to go hunting or a shotgun for self-defense at home.

*United States v. Cook*, No. 22-37, 2023 WL 8433510, at *2 (D. Del. Dec. 5, 2023).

5

This distinguishes it from challenges like this one, brought as a motion to dismiss felon-in-possession charges by a defendant with numerous, and recent, criminal convictions evidencing a history of antisocial or dangerous behavior. Indeed, the Third Circuit itself described *Range* as a "narrow" holding. 69 F.4th at 106. This Court likewise construes *Range* narrowly, *i.e.*, limiting it to the same, or reasonably similar, circumstances of an individual petitioner with a single, decades-old non-violent felony conviction affirmatively requesting to purchase a long gun, shotgun, or other gun "'in common use' today for self defense." *Bruen*, 597 U.S. at 3 (quoting *Heller*, 554 U.S. at 627).

Most courts have done the same, rejecting post-*Range* "as-applied" challenges to § 922(g)(1) prosecutions. In doing so, "[t]hose courts have found that there is a historical tradition that legislatures have disarmed those individuals thought to be dangerous or a threat to public safety if armed." *Cook*, 2023 WL 8433510, at *2 (citations omitted). Indeed, the Third Circuit recently rejected, albeit in a non-precedential decision, a Second Amendment challenge to § 922(g)(1). In *United States v. Hall*, No. 23-1430, 2024 WL 510512, at *2 (3d Cir. Feb. 9, 2024), the Circuit considered the defendant's argument that "the Second Amendment bars punishing him for carrying a gun," and held that "[n]othing in [*Range*]," which involved a "single, decades-old conviction of minor welfare fraud," "suggests that it applies to someone with [defendant's] long, serious criminal history." *Id.*

This Court does not, however, rest on the determinations of other courts; it also independently finds that § 922(g)(1) is not facially unconstitutional, or unconstitutional as applied.

### B. The Court Assumes *Arguendo* that the Second Amendment Covers Zion's Conduct

Within *Bruen*'s first step—determining whether the Second Amendment's text "covers an individual's conduct," 597 U.S. at 17—are two sub-issues: the individual and the conduct. First, the individual: as *Range* made clear, the Second Amendment applies to all Americans, not only to law-abiding citizens. 69 F.4th at 101. Thus, it applies here as well.

The next question is whether the Second Amendment applies to an individual's *conduct*. The parties disagree on the conduct at issue.[7] Zion points to the overarching conduct—possession of a firearm—that "falls squarely within the heartland of the Second Amendment." Mot. at 5 (citing *Range*, 69 F.4th at 103). The Government counters that the relevant conduct is not mere possession, but possession for "any lawful purpose." Opp'n at 8.

There is some support for the Government's theory. For example, in *Range,* the plaintiff sought, in a civil action, an affirmative declaration that he could possess a weapon despite his prior Pennsylvania state conviction for a false statement made to obtain food stamps. 69 F.4th at 98. And the Third Circuit found that whether Range's conduct was covered by the Second Amendment's plain text was an "easy question": "Range's request—to possess a rifle to hunt and a shotgun *to defend himself at home*—tracks the constitutional right as defined by *Heller*." *Id.* at 103 (citing *Heller*, 554 U.S. at 582) (emphasis added). Where an indictment charges a defendant with violating § 922(g)(1) based on conduct falling squarely within the Second Amendment's established rights—armed self-defense, hunting, or serving in the militia, *Range*'s analysis would

---

[7] The Government argues that Zion bears the burden to demonstrate that he possessed the gun and ammunition for a constitutionally protected purpose. Opp'n at 8. Zion does not reply, but generally argues that the Government's burden is to prove the provision is "consistent with this Nation's historical tradition of firearm regulations." Mot. at 7. To the extent that the Court is examining merely whether the Second Amendment's text (as interpreted by the Supreme Court and Third Circuit) applies to the conduct at issue, the burden is irrelevant.

7

more clearly control. *See United States v. Jenkins*, No. 23-88, 2023 WL 6534200, at *9 (E.D. Pa. Oct. 6, 2023).

Here, in a criminal context, the issue is not so "easy." Section 922(g)(1) may require proof of knowledge of felon status but does not mention any purpose for possessing a firearm or ammunition. This differentiates Second Amendment challenges to § 922(g)(1), which regulates possession based on felon *status*, from challenges to § 924(c)[8] and U.S.S.G. § 2D1.1(b)(1),[9] which regulate possession based on unlawful *purpose*. Courts have consistently rejected Second Amendment challenges to the latter, even after *Bruen*. *See United States v. Cash*, No. 22-2713, 2023 WL 6532644, at *3 (3d Cir. Oct. 6, 2023) (collecting post-*Bruen* cases and affirming § 924(c) conviction).

Some post-*Bruen* and *Range* decisions have considered a defendant's purpose as part of the "conduct" involved in a § 922(g)(1) charge. *See, e.g.*, *United States v. Velazquez*, No. 23-657, 2024 WL 49690 (Bumb, C.J.), at *12 (D.N.J. Jan. 4, 2024) ("[T]his Court gravely doubts the Second Amendment's text protects his conduct—possessing a firearm while allegedly engaging in drug trafficking."). In *Velazquez*, as here, the indictment contained just one charge: knowing possession of a firearm and ammunition by a felon in violation of § 922(g)(1). And because the "credible evidence . . . reveal[ed the defendant] possessed the firearm in connection with an alleged drug deal," his as-applied challenge to § 922(g)(1) failed. *Id.* at *12. Here, while Zion is not alleged to have possessed the firearm in a similar circumstance, he "has not proffered a protected purpose for his possession of a loaded handgun" and abandoned a fanny pack with a gun in it on

---

[8] Section 924(c)(1)(A) prohibits the use or carrying of firearms "during and in relation to" any crime of violence or drug trafficking crime.

[9] U.S.S.G. § 2D1.1(b)(1) imposes a sentencing enhancement where a defendant commits a drug trafficking crime and a "dangerous weapon (including a firearm) was possessed."

8

the streets of Newark. Opp'n. at 2, 12. As such, "[n]othing in the record suggests" he "carried the firearm for a lawful purpose." *Valezquez*, 2024 WL 49690, at *12.

Whatever *Bruen* and *Range* did change, they did not change prior precedent considering an individual's purpose for firearm possession and declined to extend the right to bear arms beyond *lawful* purposes like self-defense in the home. *See Jenkins*, 2023 WL 6534200, at *9-10 (citing *Binderup v. Att'y Gen.*, 836 F.3d 336 (3d Cir. 2016) (noting that *Binderup*'s plurality and concurring opinions, comprising a total 12 of 15 en banc votes, agreed that the right to bear arms was rooted in self-defense)).

Other courts have disagreed with that approach. *See, e.g., United States v. Harper*, No. 21-236, 2023 WL 5672311, at *9 (M.D. Pa. Sept. 1, 2023) ("Other than to address a Second Amendment challenge, there is no reason to require a defendant accused of illegal possession of a firearm pursuant to Section 922(g) to state his purpose for possessing the firearm. That is because the circumstances surrounding the possession do not impact the elements of the offense."); *United States v. Bullock*, No. 18-165, 2023 WL 4232309, at *20 (S.D. Miss. June 28, 2023) ("*Bruen* step one requires us to look at the 'conduct' being regulated, not the status of the person performing the conduct. . . . [T]he conduct the [G]overnment seeks to punish is Mr. Bullock's (alleged) knowing possession of a firearm in his home. It hasn't charged him with brandishing a weapon, firing one, domestic violence, assault, or battery."). *Harper* highlights a significant concern: analyzing a defendant's purpose for possession could require a defendant to "make a representation about his purpose in possessing a firearm without that representation being deemed an admission." 2023 WL 5672311, at *9.

Without a more developed factual record, the conduct inquiry at this stage is not straightforward. Ultimately, however, determination of the conduct question is not essential to the

Court's resolution of this Motion. Accordingly, for purposes of this Motion, the Court will assume *arguendo* that the Second Amendment applies to Zion's conduct.

### C. Section 922(g)(1), As Applied, is Constitutional Because This Nation Has a Historical Tradition of Disarming Those Deemed Dangerous

Where the Second Amendment has been found to apply, the Government "bears the burden of proof: it 'must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'" *Range*, 69 F.4th at 101 (quoting *Bruen*, 597 U.S. at 19).[10] Here, the Government has met its burden to show that § 922(g)(1) is consistent with "this Nation's historical tradition of firearm regulation" and does not violate the Second Amendment because disarming people posing a danger to society is deeply rooted in our country's legal traditions. *Bruen*, 597 U.S. at 17.

"This Nation has a historical tradition of disarming dangerous individuals and those who would endanger the public's safety if allowed a firearm." *Velazquez*, 2024 WL 49690, at *13 (citing *Koons v. Platkin*, No. 22-7464, 2023 WL 3478604, at *19-24 (D.N.J. May 16, 2023); *accord Range*, 69 F.4th at 111-12 (Ambro, J. concurring, joined by Greenaway, Jr., J., and Montgomery-Reeves, J.) (explaining Founding era disarmament laws "were measures driven by the fear of those who, the political majority believed, would threaten the orderly functioning of society if they were armed," and "[c]ertain regulations contemporaneous with the Fourteenth Amendment's ratification reaffirm the familiar desire to keep arms from those perceived to threaten the orderly functioning of society"); *see also United States v. Smith*, No. 23-8, 2023 WL 6795807, at *4 (W.D. Pa. Oct.

---

[10] This has been criticized as, among other things, a "historical Where's Waldo." *United States v. Love*, 647 F. Supp. 3d 664, 670 (N.D. Ind. 2022); *see also Bullock*, 2023 WL 4232309, at *2 (quoting Gordon S. Wood, *The Supreme Court and the Uses of History*, 39 Ohio N.U. L. Rev. 435, 446 (2013)) ("Yet it appears that the Court continues to engage in 'law office history'—that is, history selected to 'fit the needs of people looking for ammunition in their causes'—in Constitutional interpretation.").

10


13, 2023) ("While . . . there is no historical tradition from the colonial era or early Republic categorically disarming those merely convicted of crimes ([particularly those like Range]), there is a long history of disarming people who pose a danger to society.").

Courts in the Third Circuit have, even after *Range*, found almost uniformly that bans on possession of firearms by a person previously convicted of crimes is constitutional.[11] This includes a variety of predicate convictions for a defendant's § 922(g)(1) charge imputing some level of dangerousness or other basis for distrust.[12] These cases are consistent with the Third Circuit's caution that *Range*'s holding was a "narrow one" limited to the particular, distinguishable facts present in that case: a civil petition for possession of a weapon in the home by someone who had completed their sentence for a non-"dangerous" felony. 69 F.4th at 106.

This Court need not retread ground well-worn by the many other thorough opinions addressing the issue. The Court is persuaded, however, by the Government's myriad authorities highlighting Second Amendment precursors that disarmed those deemed "dangerous" or "distrusted." Opp'n at 12-18. Considering the overwhelming body of historical analogues, precedent, and persuasive authority, the Court finds that § 922(g)(1), as applied, is constitutional

---

[11] *United States v. Stone*, No. 22-445, 2023 WL 8832438, at *1 n.1 (E.D. Pa. Dec. 21, 2023) (collecting E.D. Pa cases); *United States v. Bost*, No. 21-30, 2023 WL 7386567, at *2 (W.D. Pa. Nov. 8, 2023) (collecting W.D. Pa and M.D. Pa cases); *United States v. Hawkes*, No. 22-111, 2023 WL 8433758 at *7 (D. Del. Dec. 5, 2023).

[12] *United States v. Morales*, No. 22-161, 2023 WL 6276672, at *1 n.1 (M.D. Pa. Sep. 26, 2023) (burglary); *United States v. Wise*, No. 21-511, 2023 WL 6260038, at *4 (W.D. Pa. Sep. 26, 2023) (prior convictions for drugs, unlawful weapons possession, and endangering the welfare of a child); *United States v. Woznichak*, No. 21-242, 2023 WL 7324442, at *6 (W.D. Pa. Nov. 7, 2023) (felony drug trafficking offenses); *Porter v. United States*, Civil Action No. 22-6199, 2023 WL 6366273, at *5 (D.N.J. Sep. 28, 2023) (same); *Bost*, 2023 WL 7386567, at *2 (terroristic threats); *United States v. Johnson*, No. 23-77, 2023 WL 6321767, at *1 (E.D. Pa. Sept. 27, 2023) (carrying a firearm without a license and receiving stolen property); *United States v. Davis*, No. 23-60, 2023 WL 6810249, at *6 (M.D. Pa. Oct. 16, 2023) (unlawful possession of a sawed-off shotgun and felony larceny); *United States v. Robinson*, No. 22-362, 2023 WL 7021320, at *1 (M.D. Pa. Oct. 25, 2023) (grand theft of a motor vehicle).

based on the predicate convictions, almost all of which are for drug trafficking and the most recent of which is for unlawful possession of a handgun.

It is true that some courts within this Circuit have dismissed § 922(g)(1) charges after finding that the Government failed to meet its burden to show a historical tradition of disarming felons.  *See United States v. Quailes*, No. 21-176, 2023 WL 5401733 (M.D. Pa. Aug. 22, 2023) and *Harper*, 2023 WL 5672311.  The same was found in Judge Reeves' thorough *Bullock* decision. 2023 WL 4232309.  However, this Court is not bound by those cases, and does not find them persuasive.

Notably, unlike in those cases, the Government has provided ample authority[13] here to affirmatively prove that § 922(g)(1) "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."  *Bruen*, 597 U.S. at 19.  In contrast, Judge Reeves in *Bullock* observed that the Government had submitted only a "three-and-a-half page response limit[ing] *Bruen* to its facts."  2023 WL 4232309, at *4; *see also Harper*, 2023 WL 5672311, at *12 ("[T]he Government makes no effort to identify a historical analogue that involves the criminalization of firearm possession for those convicted of drug trafficking offenses (or any kind of drug-related or trafficking-related offense for that matter) or robbery offenses.").

Accordingly, this Court will **DENY** the as-applied Second Amendment challenge.

### D. Because § 922(g)(1), as Applied, is Constitutional, Any Facial Challenge Also Fails

A facial challenge is "the most difficult challenge to mount successfully" because "the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).  Because there is no demonstration that §

---

[13] Zion does not reply.

12

922(g)(1) is unconstitutional as applied, the facial challenge must fail. *United States v. Mitchell*, 652 F.3d 387, 415 (3d Cir. 2011) ("Because the statute is constitutional as applied to defendant, he has not shown that there is no set of circumstances under which the statute may be applied constitutionally.") (cleaned up); *see also Velazquez*, 2024 WL 49690, at *14.

### E. Section 922(g)(1) is Not Unconstitutionally Vague

Zion's void-for-vagueness argument is unavailing. A criminal statute is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited." *United States v. Williams*, 553 U.S. 285, 304 (2008). Vagueness attacks cannot prevail where "reasonable persons would know their conduct puts [them] at risk of punishment under the statute." *United States v. Fullmer*, 584 F.3d 132, 152 (3d Cir. 2009) (cleaned up). As the Government correctly notes, the plain text of § 922(g)(1) is "explicit and readily understandable." Opp'n at 26. It prohibits those convicted of crimes punishable by more than a year in prison (or of certain misdemeanors as specifically defined) from possessing a firearm or ammunition. *Id.* The statute clearly puts individuals who previously committed a felony on notice that they are prohibited from possessing a firearm or ammunition.

### F. Section 922(g)(1) is Not an Unconstitutional Exercise of the Commerce Clause

Zion lastly asserts that § 922(g)(1) is "inconsistent with the original public meaning of the Constitution's Commerce Clause." Mot. at 14. But he acknowledges that Supreme Court precedent forecloses his argument. *Id.* (citing *NLRB*, 301 U.S. 1 (1937)). Consistent with clear precedent, the Court finds that § 922(g)(1) is an appropriate exercise of Congress's Commerce Clause powers.

### III. CONCLUSION AND ORDER

For the reasons above, it is

**ORDERED** that the motion to dismiss, D.E. 40, is **DENIED**.


May 3, 2024

                                                                     Evelyn Padin, U.S.D.J.