NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DIVINE ZION | No. 22cr527 (EP)<br><br>**MEMORANDUM ORDER** |

**PADIN**, **District Judge.**

The Newark Police Department ("NPD") arrested Defendant Divine Zion on May 1, 2022 after it received an anonymous tip that an individual it believed matched Defendant's description had a firearm. D.E. 62 ("Motion to Suppress" or "MTS"). An indictment charges Defendant with possession of a firearm by a felon. D.E. 1 (the "Indictment"). Defendant moves to suppress evidence[1] seized by law enforcement on the day of his arrest. MTS. For the reasons below, the Court will **DENY** the Motion to Suppress.

**I.     BACKGROUND**[2]

   **A.     Relevant Facts**

On May 1, 2022, the NPD's Crime Stoppers Tip Line received an anonymous report that a black male with dreadlocks wearing a blue Nike hoodie was armed with a handgun that he retrieved from a backpack near 215B Chadwick Avenue, Newark, New Jersey (the "Address"). Opp'n at 1; D.E. 72-1 at 2 ("Incident Report"). The tip was routed to NPD officers patrolling the area, which experienced "a spike in violent criminal activity." Incident Report at 1. NPD officers in two

---

[1] Defendant does not specify what evidence he seeks to suppress. As Defendant is *pro se*, the Court liberally construes his Motion to Suppress to seek suppression of any evidence recovered from Defendant on the date of his arrest, which he maintains was unlawful and subject to the exclusionary rule. MTS at 1-2.

[2] These facts are drawn in part from the body-worn camera footage and Newark PD reports, which may be relied upon for a suppression motion. *See United States v. Raddatz*, 447 U.S. 667, 679 (1980).

unmarked cars saw an individual with dreadlocks wearing what they viewed to be a greyish blue hoodie outside of the Address. Opp'n at 2. The officers pulled the two cars into the parking lot in front of the Address. *Id.*

As the officers began to exit their vehicles, Defendant immediately dropped his fanny pack in front of the Address and ran down the street. *Id.* This is confirmed by body-worn camera footage. Officer Brian Johnson-Logan picked up the fanny pack and felt what he recognized to be the outline of a handgun. *Id.* The officer then recovered a 9 mm Ruger model LC9 handgun bearing serial number 327-93615 loaded with one round in the chamber and six rounds in the magazine (the "Gun"). *Id.*

The remaining three officers, Nicodouin Gedeon, Ricardo Reillo, and Alexander Defuria, pursued Defendant on foot and then handcuffed him. *Id.* at 3. Upon learning that Defendant discarded a firearm, the officers placed Defendant under arrest. *Id.*

A federal grand jury returned a one-count indictment charging Defendant with possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1). Indictment.

**B.     Motion**

The MTS seeks to suppress all evidence recovered on the date of Defendant's arrest, arguing that the NPD's seizure of Defendant violated the Fourth Amendment and anything recovered is fruit of the poisonous tree. MTS at 6. The only factual aspect of the arrest that Defendant disputes[3] is that he did not match the anonymous tipster's description. *Id.* at 2.

---

[3] For example, Defendant does not dispute that he was in the vicinity of the Address. In Reply, he states he was "walking out of his neighbors' gate conversating" but "not inside the parking lot nor the driveway of [the Address]." D.E. 73 at 2. Defendant also states that "at the time of [his] seizure," referring to the officers' initial arrival at the Address, a "small black bag was found in-between the metal meters while defendant waited for the now known police under covers to leave." *Id.* at 7. Defendant states that then "an anxiety attac[k] [took] place for which the defendant lost conscious, and the defendant tried to walk off[.]" *Id.* He does not directly contest ownership of

2

Defendant argues that the tip described a black male with dreadlocks wearing a blue Nike "[t]ec[h] suit[]," while Defendant wore a grey NASA hoodie, a black hat, and light blue jeans with red and black glitter stripes on both sides. *Id.* The Government opposes. D.E. 72 ("Opp'n"). Defendant replies. D.E. 73 ("Reply").

**II.     ANALYSIS**

  **A.     NPD Officers' Initial Approach of Defendant Was Not a Seizure**

The circumstances underlying Defendant's Motion can be broken into two events: (1) the NPD officers' initial approach of Defendant at the Address and (2) Defendant's arrest. Defendant appears to dispute the legality of the NPD officers' "attempt to unlawfully seize [him] while walking to his girlfriend['s] car where she was parked in the parking lot waiting for [him]" because he did not match the description provided by the anonymous tipster. MTS at 2. In other words, he argues that the officers violated his Fourth Amendment rights from the moment they appeared at the Address (and the violations continued with his later arrest). The Government argues that Defendant was not seized for Fourth Amendment purposes when officers pulled into the parking lot in front of the Address. Opp'n at 8. The Court agrees with the Government.

The Fourth Amendment affords protections against "unreasonable searches and seizures[.]" U.S. Const. amend IV. "The first analytical step a court takes to evaluate the issues involved in this type of motion to suppress is to determine whether and when a citizen-police encounter implicates the Fourth Amendment." *United States v. Crandell*, 554 F.3d 79, 84 (3d Cir. 2009). "A seizure occurs only 'when [a police officer], by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *Id.* (quoting *Terry v. Ohio*, 392 U.S.

---

the bag and does not dispute that he tried to walk off (though he describes the movement as a walk, while the Government characterizes it as a run).

1, 19-20 n.16 (1968)). "The 'show of authority' test 'is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person' in light of all the surrounding circumstances." *Id.* (internal citations omitted). The Supreme Court has articulated numerous circumstances that might indicate a seizure:

> the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

*United States v. Mendenhall*, 446 U.S. 544, 554-55 (1980).

Defendant states that the officers "arrived on the scene and followed the defendant 2 houses thr[ough] the driveway and behind [] the apartment building on Chadwick [Avenue] [w]here they then blocked that entrance where the defendant [] could not leave to go to the car that was waiting for him." MTS at 2. The Government argues that the officers' "mere presence, which involved no interaction with [Defendant]" did not constitute a seizure. Opp'n at 8. The Court should "evaluat[e] all the circumstances surrounding the encounter[.]" *Crandell*, 554 F.3d at 82. By Defendant's own description, the officers drove into the driveway and one undercover car "rode slowly behind the defendant as he walked through the parking not stopping until he was out of [sight] of the undercover officers behind the apartment building." MTS at 2-3. Defendant's argument in Reply is a bit muddled; he both states that the unmarked officers "did not stop the defendant" and "would have stopped the defendant upon arrival if he did fit the description and conducted a [*Terry* stop]" and states that he "did not in any way feel free to exit either driveway" when the cars blocked the driveway of the Address. Reply at 2-3, 6.

According to the operative incident report—which Defendant does not dispute[4]—the anonymous tip described a black male with dreadlocks wearing a blue hoodie and Nike tech around the Address and armed with a gun.  Incident Report at 2.  The tipster further stated that the individual removed the handgun from a backpack and placed it on his waist band pants.  *Id.*  Units patrolling the area received the tip and Officer Johnson-Logan observed a black male with dreadlocks wearing a greyish blue hoodie and blue jeans in the parking lot of the Address.  *Id.*  As officers exited their vehicles and approached Defendant, he dropped his fanny pack on the ground and began to run.  *Id.*  Defendant maintains that he "submitted" to police authority when the unmarked cars followed him from his neighbor's porch into the driveway.  MTS at 8.  As best the Court can understand, Defendant further states that the unmarked cars "intim[idated] the defendant to get into his then girlfriend[']s car[.]"  *Id.*  He further argues that the officers' blockage of the driveway at the Address made him "panic franticly" and he "did not in any way feel free to exit either driveway."  Reply at 6.

Based on the parties' representation of the facts, there was "no application of force . . . no overwhelming show of force, no brandishing of weapons . . . no threat, no command, not even an authoritative tone of voice."  *United States v. Drayton*, 536 U.S. 194, 204 (2002).  Most charitably, the Court can construe Defendant's submissions to characterize the interaction as involving "intimidating movement" and "blocking of exits."  *Id.*  The fact that an "unmarked car blocked the parking lot driveways entrance" could, perhaps, signal to a reasonable person that his/her movement was restricted.  MTS at 3.  However, review of the body-worn camera footage of on-scene officers clearly shows that the large driveway was not, in fact, blocked.  And, "law

---

[4] Defendant argues that the incident report proves that the "prosecutor falsely stated in his response knowing truthfully the defendant did not fit the description of the crime stoppers call."  Reply at 3.

enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place[.]" *Florida v. Royer*, 460 U.S. 491, 497 (1983).  In turn, Defendant was not seized when the NPD officers arrived at the Address.

    B.    **The Fanny Pack Was Abandoned**

The Court also agrees with the Government, Opp'n at 13, that because Defendant voluntarily abandoned his fanny pack when he fled from the officers, "it was not the fruit of any seizure." *United States v. Acosta*, 751 F. App'x 201, 203 (3d Cir. 2018) (non-precedential) (citing *California v. Hodari D.*, 499 U.S. 621, 629 (1991)).  Defendant states that he "tried to walk off" from the scene.  Reply at 7.  Review of the body-worn camera footage clearly shows otherwise.  The officers are shown driving into the driveway and exiting their vehicles.  Within seconds of Officer Gedeon's exit of the vehicle (time-stamped 19:39:49), Defendant drops the fanny pack and runs away from the scene (time-stamped 19:39:51).  As such, the fanny pack was abandoned.





C. **Reasonable Suspicion Existed to Conduct a *Terry* Stop, Which Ripened into Probable Cause to Arrest Defendant**

"Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002). However, a *Terry* stop is a "well-established exception to the warrant requirement." *United States v. Johnson*, 592 F.3d 442, 447 (3d Cir. 2010) (citing *Terry*, 392 U.S. 1). A *Terry* stop permits an officer to "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot" without violating the Fourth Amendment. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Reasonable suspicion is assessed against the totality of the circumstances, which can include "location, a history of crime in the area, [defendant's] nervous behavior and evasiveness, and [an officer's] 'commonsense judgments and inferences about human behavior.'" *Johnson v. Campbell*, 332 F.3d 199, 206 (3d Cir. 2003) (quoting *Wardlow*, 528 U.S. at 124-25).

Defendant seems to argue that the NPD did not have reasonable suspicion to seize him, referring to the officers' arrival at the Address. MTS at 2. The Government responds that the

7

totality of the circumstances conferred law enforcement with reasonable suspicion that Defendant had committed or was about to commit gun-related criminal activity. Opp'n at 10. The Court agrees and clarifies that reasonable suspicion existed to seize Defendant after his flight, as the Court already finds that no seizure occurred upon the officers' initial arrival at the Address.

*First*, Defendant does not dispute that an anonymous tip described someone with a gun near the Address. MTS at 2. However, reasonable suspicion that an individual is carrying a gun, alone, does not indicate criminal activity is afoot. *United States v. Garvin*, 548 F. App'x 757, 759 (3d Cir. 2013). "However, an anonymous tip can be the basis for reasonable suspicion if accompanied by specific indicia of reliability." *United States v. Holloway*, 489 F. App'x 591, 593 (3d Cir. 2012) (non-precedential). Here, the tipster was an "eyewitness who had 'recently witnessed the alleged criminal activity.'" *United States v. Torres*, 534 F.3d 207, 211 (3d Cir. 2008) (quoting *United States v. Brown*, 448 F.3d 239, 249-50 (3d Cir. 2006)); Incident Report at 2 ("the tipster further stated that the unknown black male removed the handgun from a back pack and placed it on his waist band pants."). Additionally, "the content of the tip was relatively detailed[.]" *Torres*, 534 F.3d at 211; Incident Report at 2 (describing individual). The information was "credibly available to the tipster and it accurately predicted what would follow," *Torres*, 534 F.3d at 212, namely, that an individual with a similar description to that provided would be found with a gun near the Address.

*Second*, Defendant does not dispute that the NPD officers patrolled an area that "experienced a spike in violent criminal activity" possibly caused by "rival gangs disputing over control of open-air drug market, and spike in auto theft." Incident Report at 1. And stops occurring in a high crime area are "among the relevant contextual considerations in a *Terry* analysis." *Wardlow*, 528 U.S. at 124 (citing *Adams v. Williams*, 407 U.S. 143, 144, 147-48 (1972)).

Defendant also does not meaningfully dispute that he dropped his fanny pack and ran down the street as officers began to exit their vehicles. Opp'n at 2; Reply at 11 ("[I]f the defendant touched any type of firearm, there would be finger prints on that firearm and as stated by the prosecutor they have not conducted any DNA testing on the firearm, which means the defendant did not touch any firearm and is indeed a victim of malicious prosecution."). Additionally, as explained *supra*, review of the body-worn camera footage clearly shows that Defendant dropped the fanny pack and ran away from the officers.

The Supreme Court has "recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion" and "[h]eadlong flight—wherever it occurs—is the consummate act of evasion[.]" *Wardlow*, 528 U.S. at 124. Accordingly, the totality of the circumstances created reasonable suspicion to justify a seizure of Defendant, at least at the point of his flight. *See Acosta*, 751 F. App'x at 203 (finding suggestion of crime where "[t]he officers received a tip. They found someone matching the tipster's description in the right place. The area was known for crime. And the suspect fled without provocation[.]").

As the Court already explained above, Defendant voluntarily abandoned his fanny pack at this point, and it was not a fruit of any seizure. However, the Court additionally finds that the officers developed probable cause to arrest Defendant.

"Law enforcement authorities do not need a warrant to arrest an individual in a public place as long as they have probable cause to believe that person has committed a felony." *United States v. McGlory*, 968 F.2d 309, 343 (3d Cir. 1992). And "[p]robable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe an offense had been committed." *Id.* For the same reasons that conferred the officers with reasonable suspicion, the circumstances also "viewed from the standpoint of an

9

objectively reasonable police officer, amount to . . . probable cause." *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

As noted, a tipster gave a contemporaneous, detailed description of an individual with a gun near the Address. Incident Report at 2 (describing individual). "[A]n informant's 'veracity,' 'reliability' and 'basis of knowledge' are all highly relevant in determining the value of his report.'" *O'Connor v. City of Philadelphia*, 233 F. App'x 161, 164 (3d Cir. 2007) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983)). Although the tipster was not an "informant," per se, the same reasoning applies: "corroboration of an informant's tip by independent police work enhances the value of an informer's tip." *Id*. at 165. After Defendant fled from the scene and disposed of the fanny pack, officers had reasonable suspicion to conduct a *Terry* stop, as well as search the contents of the voluntarily discarded fanny pack.

When Defendant dropped his fanny pack, the officers "heard a metallic object hit the ground from the fanny pack when it hit the ground." Opp'n at 2. Officer Johnson-Logan then picked up the fanny pack "and felt what he immediately recognized to be the outline of a handgun." *Id*. When Officer Johnson-Logan recovered the Gun, the officers pursuing Defendant on foot had probable cause to effectuate the arrest. *Id*. at 18; *United States v. Belle*, 593 F.2d 487, 497 n.15 (3d Cir. 1979) ("The collective knowledge of the investigating officers is measured in determining probable cause."); *see also United States v. Goode*, 309 F. App'x 651, 654 (3d Cir. 2009) ("When reasonable suspicion surrounding a suspect ripens into probable cause during the course of an investigatory stop, arrest of that suspect is lawful.").

Given the foregoing sequence of events, a reasonable officer could have believed that Defendant committed a crime. *See Acosta*, 751 F. App'x at 203. The combination of a detailed tip, Defendant's flight, and discovery of the Gun created probable cause for the arrest. *Id*.

Accordingly, Defendant has no basis to suppress the Gun (or any other evidence recovered during the arrest that he seeks to suppress).

The Court will also **DENY** Defendant's request for an evidentiary hearing. MTS at 5. Evidentiary hearings on suppression motions are not granted as a matter of course. *United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010). A Defendant's motion must demonstrate a "colorable claim" for relief demonstrating "issues of fact material to the resolution of the defendant's constitutional claim." *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996). As explained above, Defendant fails to point to any material facts in dispute to warrant an evidentiary hearing.

### III.    CONCLUSION AND ORDER

For the reasons above, it is

**ORDERED** that Defendant's Motion to Suppress, D.E. 62, is **DENIED**.

September 18, 2024

Evelyn Padin, U.S.D.J.