NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DIVINE ZION | No. 22cr527 (EP)<br><br>**MEMORANDUM ORDER** |

**PADIN**, **District Judge.**

An Indictment charged Defendant with possession of a firearm by a felon. D.E. 1 ("Indictment"). On October 8, 2024, Defendant pled guilty pursuant to a plea agreement. D.E. 84. Defendant's sentencing is currently set for April 2, 2025. D.E. 82. Defendant has filed a series of documents requesting that his plea be withdrawn. D.E.s 87, 93-94 (collectively, the "Motion"). The Government opposes. D.E. 96 ("Opp'n"). For the reasons below, the Court will **DENY** the Motion.

I.   BACKGROUND

On May 1, 2022, the Newark Police Department's ("NPD") Crime Stoppers Tip Line received an anonymous report that a black male with dreadlocks wearing a blue Nike hoodie was armed with a handgun that he retrieved from a backpack near 215B Chadwick Avenue, Newark, New Jersey (the "Address"). D.E. 76 at 1. NPD officers pulled into the parking lot in front of the Address after they saw an individual with dreadlocks wearing what they viewed to be a greyish blue hoodie. *Id.* at 2. As confirmed by body-worn camera footage reviewed by the Court, as the officers began to exit their vehicles, Defendant immediately dropped his fanny pack in front of the Address and ran down the street. *Id.* An officer picked up the fanny pack and felt what he recognized to be the outline of a handgun and recovered a 9 mm Ruger model LC9 handgun bearing serial number 327-93615 loaded with one round in the chamber and six rounds in the

magazine. *Id.* Defendant was pursued on foot by other officers and was placed under arrest. *Id.* A federal grand jury returned a one-count indictment charging Defendant with possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1). Indictment.

After Defendant requested to proceed *pro se*, the Court held a thorough *Faretta* hearing on May 30, 2024. Without belaboring the entire colloquy, Defendant was informed repeatedly about the risks of proceeding without counsel, the benefits of representation, and the general responsibilities that came with proceeding *pro se*. For example, Defendant was told that "even despite preparation, unexpected events arise that require an instant response to protect the defendant's right. An experienced attorney will have seen many of these situations before in his or her career. This will all be new to you." D.E. 63, 14:19-23. The Court also recited a number of advantages to "having experienced defense counsel in your corner." *Id.*, 14:23-17:22. Emphasizing the pitfalls of defending oneself without counsel, the Court warned Defendant in no uncertain terms "[t]hat's why they say that the person who represents themselves is a fool." *Id.*, 16:11-12. The Court also warned Defendant of the numerous complex rules and procedures that experienced attorneys are familiar with. *Id.*, 18:20-19:17. Defendant was instructed that he must comply with such rules and was informed of other processes involved in trial. *Id.*, 19:19-23. Defendant remained steadfast in his desire to proceed *pro se*.

The Court then discussed the potential appointment of standby counsel, indicating that standby counsel could "take over your case if the Court determines you cannot competently represent yourself, or if you change your mind about representing yourself[.]" *Id.*, 21:9-11. Defendant was advised that standby counsel "is not cocounsel[.]" *Id.*, 21:22. Defendant said he understood and agreed to the appointment of standby counsel. *Id.*, 22:2. The Court again advised Defendant against proceeding without counsel and reemphasized all of the risks in doing so, *id.*,

2

25:1-24, and Defendant stated that he "would like to actually thank you for informing me on things that I wasn't aware of, but I'm definitely still focused on going *pro se* with standby counsel." *Id.*, 26:5-8. The Court found that Defendant's decision to do so was made knowingly and voluntarily. *Id.*, 27:6. On June 4, 2024, Laura K. Gasiorowski was appointed standby counsel for *pro se* Defendant. D.E. 54. On October 8, 2024, Defendant entered a plea of guilty pursuant to a plea agreement. D.E. 84.

Beginning on December 19, 2024, Defendant sought to withdraw his guilty plea. D.E. 87. Defendant's arguments consist of two main points: (1) Defendant contests that his pretrial time credits were not properly considered in his plea agreement and (2) he has "more than one new issue that could reveal a[n] unprecedented change in the case." *Id.* As to the plea agreement negotiations, Defendant states that he was "not fully informed of the pretrial jail credits that was not inserted into the actual plea agreement, and if a stand by counsel was being effective they would have felt the need to consider or at least inquire about these credits." D.E. 94 at 3. He further maintains that when he appeared in Court, he asked the Government about the jail credits on the record "and it was stated it would be calculated upon incarceration." *Id.* at 5. Regarding the purported "new evidence," Defendant avers that he has seen video from the date of his arrest of "the defendant not standing in front of" the Address, leading him to believe that "the indictment was obtained through false information." D.E. 93 at 1. He also maintains that he "has continually and categorically denied possessing a firearm and ammunition." D.E. 94 at 6. Defendant also contends that the Government would not be prejudiced by the withdrawal. *Id.* at 7.

## II.    LEGAL STANDARD

"Once a court accepts a defendant's guilty plea, the defendant is not entitled to withdraw that plea simply at his whim." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003). A

3

defendant may withdraw a guilty plea "'after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal.'" *United States v. Johnson*, 491 F. App'x 326, 329 (3d Cir. 2012) (quoting Fed. R. Cim. P. 11(d)(2)(B)). The burden of demonstrating this reason "falls on the defendant, and that burden is substantial." *Jones*, 336 F.3d at 252. "A district court must consider three factors when evaluating a motion to withdraw a guilty plea: (1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." *Id.* The Government need not show prejudice if the Defendant cannot meet his burden. *United States v. Shumaker*, 475 F. App'x 817, 821 (3d Cir. 2012).

## III.  ANALYSIS

### A.  Defendant Has Not Credibly Asserted His Innocence

The extent to which Defendant maintains his innocence are a few sporadic sentences, averred without citation to any supporting evidence, that "he is innocent and not guilty of the charged offenses, and of the crime to which he mistakenly pled guilty," "has in prior motions asserted a colorable claim of innocen[ce]," and "has continually and categorically denied possessing a firearm and ammunition." D.E. 94 at 6-8. However, "[d]efendants are not permitted to rely on 'bald assertions of innocence' to support their withdrawal of a guilty plea, but must support their innocence by facts in the record." *Shumaker*, 475 F. App'x at 821.

*First*, the Court disagrees with Defendant that he has previously made colorable claims of innocence in filings with the Court. For example, Defendant's motion to dismiss the indictment, D.E. 40, submitted by his then-counsel Jerome A. Ballarotto, made an argument regarding the constitutionality of Section 922(g)(1) in light of *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) and *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) (en banc). After

4

disposing of counsel, *pro se* Defendant then filed a motion to suppress, D.E. 62, in which he primarily contested his similarity to the description provided to NPD officers by an anonymous tipster of an individual with a gun near the Address. *Id.* at 2. Defendant also argued it was "false" that he was standing in the driveway of the Address. *Id.* at 5-6. He maintains that position now, contending—without supporting evidence—that he has seen video from the date of his arrest of "the defendant not standing in front of" the Address, leading him to believe that "the indictment was obtained through false information." D.E. 93 at 1. The Court notes that it included time-stamped screenshots of body-worn camera footage showing Defendant running from the Address in its previous decision addressing Defendant's motion to suppress. D.E. 76 at 6-7 ("Motion to Suppress Decision"). In denying the motion, the Court also observed then that "[t]he only factual aspect of the arrest that Defendant disputes is that he did not match the anonymous tipster's description." *Id.* at 2. Defendant's about-face now does not transform his previous representations to the Court into consistent colorable claims of innocence.

*Second*, and more aptly, the "record in this case plainly contradicts" Defendant's assertion of innocence. *Shumaker*, 475 F. App'x at 821. At Defendant's plea hearing on October 8, 2024, the Court asked Defendant numerous questions to assure his plea was entered knowingly and voluntarily. And without qualification, he admitted to the underlying conduct. He answered "yes" when asked by the Court if "on or about May 1, 2022, in Essex County, New Jersey, did you knowingly and intentionally possess a firearm and ammunition?" D.E. 96-1, 33:22-25 ("Plea Tr."). He also answered "yes" when asked if prior to that date, "had you been convicted of at least one crime punishable by imprisonment for a term exceeding one year?" *Id.*, 34:8-11. Moreover, as already explained, "[a]s to the additional evidence that [Defendant] claims to have uncovered in the wake of his plea, it does nothing to further his cause." *United States v. Monac*, 120 F. App'x

924, 927 (3d Cir. 2005). Even if Defendant could summon the video he claims exists showing his absence from the Address, D.E. 93 at 1, the body-worn camera footage cited by the Court in its Motion to Suppress Decision directly contradicts such an assertion. Accordingly, Defendant fails to carry his burden as to the first factor.

### B. Defendant Does Not Provide Strong Reasons to Withdraw His Plea

The Court is also unpersuaded by Defendant's reasons for a plea withdrawal. Defendant asserts that the ineffective assistance of standby counsel—specifically, that standby counsel "failed to inform the defendant that his pretrial or home incarceration credits would not be implicated during the meeting prior into attending court later that day"—warrants withdrawal. D.E. 94 at 5. Essentially, he argues that he would not have accepted the plea agreement if he was "fully aware" that pre-trial credit earned would not be factored into the plea. *Id.* But "a defendant proceeding *pro se* waives potential claims of ineffective assistance of counsel against himself or his nonexistent counsel." *United States v. Fields*, Crim. No. 15-129, 2024 WL 1555932, at *29 (E.D. Pa. Apr. 10, 2024); *see also United States v. Tilley*, 326 F. App'x 96, 96 (3d Cir. 2009) (defendant "had no constitutional right to standby counsel[.]"). This was explained extensively to Defendant during his *Faretta* hearing, including the limited role of standby counsel and the fact that Ms. Gasiorowski would not serve as co-counsel. D.E. 63, 21:21-22. He was warned, and clearly understood, "that if you represent yourself, you are on your own[.]" *Id.*, 20:16-17. After steadfastly demanding to represent himself and reject his constitutional right to an attorney, Defendant cannot now claim that his self-representation was ineffective.

Even if an ineffective assistance of counsel argument were available to Defendant, the Court finds that Defendant has failed to meet his burden. "To establish ineffective assistance of counsel, the defendant must prove: (1) that counsel's performance fell below an objective standard

of reasonableness [] and (2) that the deficient performance prejudiced the defense, which requires a showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Williams v. Taylor*, 529 U.S. 362, 363 (2000) (cleaned up). "A defendant who pleads guilty may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of professional competence." *United States v. Prence*, Crim. No. 13-227, 2019 WL 1778960, at *4 (W.D. Pa. Apr. 23, 2019) (citing *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985)). "In order to meet the prejudice prong of an ineffective assistance of counsel claim, the petitioner must 'show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Id.*

Defendant has not shown that Ms. Gasiorowski's performance as *standby counsel* fell below an objective standard of reasonableness. There is no credible evidence that Defendant was "coerced into the plea" based on Ms. Gasiorowski's purported failure to explain to Defendant that his "good time credit" earned pre-trial would not "be implicated in this new plea ageement[.]" D.E. 94 at 5. Defendant responded "yes" when asked "[t]here's no doubt in your mind that you're willing to accept this plea agreement?" Plea Tr., 16:3-5. He answered "yes" when asked "nobody's forcing you or coercing you to enter into this plea agreement?" *Id.*, 16:6-9.

Defendant also maintains that he asked the Government "on the record" about jail credits. D.E. 94 at 5. Regarding jail credits, Defendant said "yes" when asked if he understood that "the bureau of federal prisons does give people what's called good time credit and that's something that you negotiate with them when you go to serve your sentence." Plea Tr., 21:19-21. It seems that Defendant's argument hinges on standby counsel failing to negotiate a shorter sentence. However, "precedent makes clear that, once a district court has accepted a defendant's guilty plea, he is not

7

entitled to withdraw it because he faces a harsher punishment than originally expected or some other sentencing outcome that he finds unsatisfactory." *United States v. Cormier*, 758 F. App'x 269, 273 (3d Cir. 2018).

Defendant simultaneously states that he did not understand how his pre-trial credits would be factored into the plea agreement (notably, not that Ms. Gasiorowski misled him) due to "cultural and language differences, as well as the fact that Defendant has no prior contacts with the criminal justice system[.]" D.E. 94 at 6. The Court is unsure what Defendant means, but in any event, he was asked during the plea colloquy if he could read and write the English language, to which he responded "yes." Plea Tr., 6:2-4. The Court is also admittedly confounded at Defendant's assertion that he has no prior contacts with the criminal justice system, when he himself affirmed that he was previously convicted of a crime punishable by imprisonment by a term exceeding one year. *Id.*, 32:19-33:3.[1] As to Defendant's argument that "his ability to comprehend is somewhat compromised when he is anxious and nervous," D.E. 94 at 7, the Court finds this falls woefully short of Defendant's burden to demonstrate standby counsel "made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Prence*, 2019 WL 1778960, at *3 (citing *Ross v. Dist. Att'y of the Cnty. of Allegheny*, 672 F.3d 198, 210 (3d Cir. 2012)). Therefore, Defendant has failed to meet his burden as to the second factor in a plea withdrawal analysis. As Defendant cannot meet his burden on either of the first two factors, the Court need not conduct an analysis of whether or not the Government would be prejudiced by withdrawal. *Shumaker*, 475 F. App'x at 821.

---

[1] The Court has also previously outlined Defendant's full history of felony convictions. D.E. 51 at 2.

Lastly, the Court notes that no evidentiary hearing is required to decide a motion to withdraw a guilty plea, as is the case here, if "the record in the proceedings leading to the plea shows compliance with rule 11, or if it shows conclusively that the plea was voluntarily, knowingly and intelligently made." *United States v. Jasper*, 481 F.2d 976, 978-79 (3d Cir. 1973). Therefore, the Court will **DENY** the Motion. The Court will also **DENY** the parties' outstanding motions *in limine*, D.E.s 79-80, as **MOOT.**

IV. **CONCLUSION AND ORDER**

For the reasons above, it is

**ORDERED** that Defendant's Motion, D.E.s 87, 93-94, is **DENIED**; and it is further

**ORDERED** that the parties' motions *in limine*, D.E.s 79-80, are **DENIED** as **MOOT**.

January 21, 2025

Evelyn Padin, U.S.D.J.